IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STROH DIE CAST LLC,

                                         Plaintiff,

    v.

STONERIDGE CONTROL DEVICES, INC.,

                                         Defendant,                      OPINION and ORDER

    v.                                                                      20-cv-855-jdp

ADVANCE DIE CAST, LLC, MICHIGAN DIE
CASTING, LLC, GREAT LAKES DIE CAST CORP.,
MUMFORD METAL CASTING, LLC,
and PHIL MUMFORD, JR.,

                                         Counterclaim defendants.

---

        Plaintiff Stroh Die Cast LLC and defendant Stoneridge Control Devices, Inc. are suing each other for breach of contract. Stroh alleges that Stoneridge failed to pay for goods as promised. Stoneridge alleges that Stroh provided defective goods and unilaterally raised prices.

        Two motions for summary judgment are before the court, but neither one was filed by Stroh or Stoneridge. Rather, both were filed by counterclaim defendants Advance Die Cast, LLC, Michigan Die Casting, LLC, Great Lakes Die Cast Corp., Mumford Metal Casting, LLC, and Phil Mumford, Jr. The court allowed Stoneridge to add these parties under Rules 13(h) and 20 of the Federal Rule of Civil Procedure because Stoneridge alleges that they agreed to be held liable for any breaches by Stroh. In addition to breach of contract, Stoneridge asserts counterclaims against counterclaim defendants for breach of the implied warranty of

merchantability, breach of the implied warranty of fitness, promissory estoppel, and fraudulent misrepresentation.

Counterclaim defendants' two summary judgment motions overlap. Their first motion seeks summary judgment on all of the counterclaims against them. Dkt. 27. Their second motion, filed after the parties completed briefing the first motion, addresses the misrepresentation counterclaim only, and it includes new arguments for dismissing that claim. Dkt. 46. Under this court's procedures, "[a] party may not file more than one motion for summary judgment . . . without leave of court." Dkt. 22, at 2. Counterclaim defendants neither sought leave to file the second motion nor explained in the second motion why they couldn't have included all arguments in their first motion.

The court need not decide whether to strike the second motion because counterclaim defendants are entitled to summary judgment based on their first motion. Specifically, all of Stoneridge's counterclaims against these defendants fail because the counterclaims rest on an assumption that an email Phil Mumford, Jr. sent Stoneridge is an enforceable contract. But even if the email was an offer to contract, Stoneridge hasn't adduced evidence of its acceptance. And even if there was an enforceable guaranty, the terms of that guaranty don't encompass Stoneridge's contract counterclaims.

BACKGROUND

The following facts are undisputed unless otherwise noted.

Stroh makes aluminum die-castings. Stoneridge makes automotive parts. During the time relevant to this case, Stroh was one of Stoneridge's suppliers.

In July 2019, Stoneridge had concerns about the quality of Stroh's products and the timeliness of their deliveries, so Stoneridge asked Phil Mumford, Jr., who was one of Stroh's principals, to personally guaranty Stroh's obligations to Stoneridge. Over the next two weeks, Stoneridge and Mumford sent each other proposed guaranties over email.

A July 20 email proposed guaranty language that included Phil Mumford, Jr., Phil Mumford, Sr., and the four entity counterclaim defendants.[1] The parties don't explain the relationship of all the entity defendants to Mumford, but there is no dispute that Mumford had the authority to make a contract on their behalf. One of the issues raised by counterclaim defendants' motion is whether Mumford and Stoneridge actually agreed to a guaranty, so the court will discuss the July 20 email in more depth in the analysis section.

In August 2019, Stroh unilaterally increased its prices on some of the parts that Stoneridge purchased from Stroh. Stoneridge protested the increase, but Stoneridge says that it still signed a new contract to reflect the increase because doing so was necessary to "prevent a catastrophic line shutdown." Dkt. 37, ¶ 14. Stoneridge also continued to have objections to the quality of Stroh's parts and the timeliness of its deliveries.

In early 2020, Stroh informed Stoneridge that Stroh was closing its facility and that an affiliated company, counterclaim defendant Great Lakes Die Cast Corp., would take over production of the parts that Stroh was supplying to Stoneridge. Stoneridge believed that Stroh's actions were a breach of the parties' contract, so Stoneridge terminated the contract.

The court has jurisdiction under 28 U.S.C. § 1332, which requires an amount in controversy that is more than $75,000 and diversity of citizenship between the plaintiff and

---

[1] Stoneridge originally asserted a counterclaim against Phil Mumford, Sr., but Stoneridge later voluntarily dismissed that counterclaim. *See* Dkt. 25, at 1.

defendant. Stroh alleges nearly $1 million in damages in the complaint, Stroh is a limited liability company with members who are citizens of Florida and Illinois, and Stoneridge is a corporation that is a citizen of Massachusetts (where it is incorporated) and Michigan (where its principal place of business is located). Dkt. 64. As discussed in a previous opinion, the court need not consider the citizenship of the counterclaim defendants because the court has supplemental jurisdiction over Stoneridge's counterclaims against them, regardless of whether their citizenship is diverse from the other parties. *See* Dkt. 25, at 4.

The court will discuss additional facts as they become relevant to the analysis.

ANALYSIS

**A. Stoneridge's request under Rule 56(d)**

Stoneridge's summary judgment brief begins with a contention that counterclaim defendants' motion for summary judgment was "premature," and Stoneridge requests more time to conduct discovery. Dkt. 33, at 7. It's true that counterclaim defendants filed their first motion for summary judgment before the deadline for filing dispositive motions. But neither this court's scheduling order nor the Federal Rules of Civil Procedure prohibit a party from filing an early motion for summary judgment, and no party is entitled to delay responding to a motion simply because it was filed before the deadline. *See Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864–65 (7th Cir. 2019).

Federal Rule of Civil Procedure 56(d) allows a court to deny or defer consideration of a summary judgment motion if the nonmoving party shows that "it cannot present facts essential to justify its opposition." To obtain relief under Rule 56(d), the nonmoving party must: (1) identify "specific evidence" it seeks to support its claims; and (2) explain how that

4

evidence would defeat the pending summary judgment motion. *See Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 885 (7th Cir. 2005); *United States v. All Assets & Equipment of West Side Building Corp.*, 58 F.3d 1181, 1190–91 (7th Cir. 1995). The nonmoving party may not rely on speculation. *Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*, 900 F.3d 884, 890 (7th Cir. 2018). Moreover, a party who seeks relief under Rule 56(d) should file a separate motion soon after the summary judgment motion is filed to alert the court that more time is needed. *See De Jesus v. De Jesus*, No. 11-cv-579-bbc, 2012 WL 13042522, at *7 (W.D. Wis. Apr. 3, 2012) ("[P]laintiffs should have filed a motion under Fed. R. Civ. P. 56(d) as soon as defendants filed their own summary judgment motion."); *see also Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006) (party should "move for a continuance and submit an affidavit explaining why the additional discovery is necessary").

In this case, Stoneridge didn't promptly file a Rule 56(d) motion. Instead, Stoneridge included its request for more time 21 days later in its response to the counterclaim defendants' summary judgment motion, so the court wasn't aware of the request until after that motion was ready for review. Setting aside Stoneridge's procedural misstep, the court concludes that Stoneridge isn't entitled to relief because Stoneridge neither identifies specific evidence it needs nor explains how additional evidence would help to defeat counterclaim defendants' summary judgment motion. Rather, Stoneridge's counsel simply says in his declaration that he "wishes to discover additional evidence regarding Phil Mumford, Jr.'s personal guarantee on behalf of himself and the Counterclaim Defendants, as well as additional representations made by and on behalf of Stroh" and that he "believes that interrogatories, document requests, and depositions related" to those issues "will reveal the extent of the Counterclaim Defendants' liability to Stoneridge." Dkt. 33-4, ¶¶ 9–11.

These vague statements are nothing more than "a fond hope that more fishing might net some good evidence," which isn't enough to satisfy Rule 56(d). *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864–65 (7th Cir. 2019). The closest Stoneridge comes to identifying specific evidence is its reference to "additional representations by and on behalf of Stroh." But Stroh didn't move for summary judgment, so it isn't clear why those representations would be relevant to Stoneridge's counterclaims against counterclaim defendants. In any event, Stoneridge's counterclaims against counterclaim defendants are about representations made to Stoneridge, so Stoneridge doesn't need discovery to identify those.

The futility of giving Stoneridge more time is shown by its response to counterclaim defendants' second motion for summary judgment. Counterclaim defendants didn't file that motion until the deadline for filing dispositive motions. But, even then, Stoneridge still asked for more time to conduct discovery, again failing to explain what additional discovery it needed or how that discovery would make a difference. *See* Dkt. 49, at 6–9.

Stoneridge's request for more time under Rule 56(d) is denied. Stoneridge's brief in opposition to counterclaim defendants' first summary judgment motion also included a substantive response to the motion, so the court will proceed to the merits.

## B.  Breach of contract and breach of warranty

Stoneridge's contract and warranty counterclaims against the counterclaim defendants are based on an email that Phil Mumford, Jr. sent on July 20, 2019, to Dan Kusiak, who was the chief procurement officer for Stoneridge at the time. The body of the email states:

> Hello Dan,
>
> Phil Mumford Sr and Phil Mumford Jr, as owners of Stroh Die Cast LLC ("Mumford"), personally guarantee the payment and completion of all Stoneridge ordered and paid-for tooling, fixtures and parts. Jointly with our other 4 aluminum die casting

6

>companies (Advance Die Cast, Michigan Die Casting, Great Lakes Die Cast and Mumford Metal Casting Chicago) we will take every reasonable effort to provide continuity in manufacturing of Stoneridge's castings sourced at Stroh. The financial viability of Stroh as an independent entity, or lack therefore, will not impact Mumford's ability and commitment to supply Stoneridge. Mumford's ongoing commitment requires only the reasonable commercial cooperation from Stoneridge as a customer.
>
>Sincerely,
>
>Phil Mumford Jr.

Dkt. 31-4. Stoneridge contends that the email is an enforceable contract that makes all of the counterclaim defendants liable for the breaches of contract that Stoneridge is asserting against Stroh.

Counterclaim defendants challenge this claim on four grounds: (1) the July 20 email was not a contractual offer but only "proposed language regarding a possible guaranty," Dkt. 28, at 9; (2) even if the email was an offer, Stoneridge hasn't adduced evidence of an acceptance of that offer; (3) the email doesn't meet the requirements for the statute of frauds, Wis. Stat. § 241.02; and (4) by its own terms, the email doesn't apply to Stoneridge's claims against counterclaim defendants. The court agrees with contentions (2) and (4), so it isn't necessary to consider the others.

1. **Evidence of acceptance**

Every contract requires an offer and acceptance. *Marks v. Houston Cas. Co.*, 2016 WI 53, ¶ 56, 369 Wis. 2d 547, 583, 881 N.W.2d 309, 328.[2] The court will assume that Mumford's

---

[2] The parties assume that Wisconsin law applies, so the court has done the same. *See RLI Insurance Company v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits.").

July 20 email qualifies as an offer, but Stoneridge hasn't adduced evidence of its acceptance. It's undisputed that Stoneridge didn't respond directly to Mumford's email, and there is no evidence that Stoneridge accepted Mumford's offer in writing. It's also undisputed that the parties continued exchanging multiple drafts of proposed guaranties after July 20, suggesting that the parties hadn't reached agreement on the July 20 email. *See* Dkt. 31-6 and 31-8. Stoneridge doesn't explain why it would be negotiating multiple guaranties with the same parties. And it doesn't cite any evidence that any party viewed the July 20 email as an enforceable contract before this lawsuit was filed or even that any party mentioned that email in writing again.

Stoneridge's sole piece of evidence that it accepted Mumford's offer in the July 20 email is the following line from Kusiak's declaration: "During a phone call subsequent to the July 20, 2019 email, Dan Kusiak represented Stoneridge's acceptance of the July 20, 2019 Payment and Performance Guaranty." Dkt. 35, ¶ 11. But that conclusory statement doesn't create a genuine issue of material fact. Stoneridge doesn't identify when the "subsequent" phone call occurred, or, more important, what Kusiak said to "represent[] Stoneridge's acceptance." It is well established that parties may not rely on conclusory allegations at the summary judgment stage. *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018); *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 722–23 (7th Cir. 2008). Rather, Stoneridge must point to "specific facts" that support its claim. *See Bordelon v. Bd. of Educ. of the City of Chicago,* 811 F.3d 984, 991 (7th Cir. 2016); *Cedar Farm, Harrison County, Inc. v. Louisville Gas and Elec. Co.*, 658 F.3d 807, 812 (7th Cir. 2011). By failing to describe the content of the alleged conversation or provide any other context, Stoneridge makes it impossible for the court to evaluate whether there "was a meeting

of the minds upon all essential terms," as required under Wisconsin law to create a contract. *See Todorovich v. Kinnickinnic Mut. Loan & Bldg. Ass'n*, 238 Wis. 39, 298 N.W. 226, 227 (1941).

The conclusory statement in Kusiak's declaration doesn't create a genuine issue of material fact under Rule 56. That's the only evidence Stoneridge cites to prove its acceptance, so the court will grant counterclaim defendants' summary judgment motion on Stoneridge's contract counterclaim. The court will also grant summary judgment on warranty counterclaims, as those are also premised on an enforceable contract between Stoneridge and the counterclaim defendants.

### 2. Scope of the promises in the July 20 email

Even if the court assumes that Stoneridge had accepted Mumford's offer, Stoneridge's contract counterclaim against counterclaim defendants fails because Stoneridge hasn't shown a breach. Stoneridge alleges in its counterclaim that counterclaim defendants breached the guaranty in the July 20 email by failing to do two things: (1) "timely provide quality parts"; and (2) "ensure that Stoneridge is paid the outstanding amounts owed to Stroh." Dkt. 13, ¶ 53. The July 20 email doesn't include a promise to do either of those things, so counterclaim defendants are entitled to summary judgment on that ground as well.

The July 20 email includes two passages that could be reasonably construed as promises. First, the only portion of the email related to the entity defendants is about making "reasonable effort to provide continuity in manufacturing." They weren't promising quality parts, timely delivery of those parts, or to guaranty Stroh's obligations to Stoneridge. And Stoneridge doesn't allege that the entity defendants failed to make reasonable efforts to provide continuity in manufacturing. So those defendants are entitled to summary judgment on this claim.

9

Second, the email says that Mumford "personally guarantee[d] the payment and completion of all Stoneridge ordered and paid-for tooling, fixtures and parts." Stroh appears to read the reference to "payment" as a promise to guaranty all Stroh's obligations to Stoneridge, but the email doesn't say that. Rather, Mumford appears to be promising payment to Stoneridge for "tooling, fixtures and parts" that Stoneridge ordered from Stroh. That provision makes little sense because it was Stoneridge that was paying Stroh for parts and tooling. But it *would* make sense for Stoneridge go object to that language as being inadequate to establish Mumford's obligation to pay any amounts that Stroh might be liable for as a result of future breaches or litigation. Whatever the provision means, it isn't a promise to guaranty all Stroh's obligations to Stoneridge.

Stoneridge did include a guaranty of Stroh's obligations in some of the proposed guaranties that *Stoneridge* drafted. *See* Dkt. 31-1 (July 18 proposal for a guaranty of "the full and punctual payment and performance of all past, present and future obligations" of Stroh); Dkt. 31-6 (July 24 proposal to "guarantee on a continuing basis, and as primary obligors on a joint and several basis, the full and punctual payment of all amounts Stroh owes Stoneridge or will owe Stoneridge in the future"). But it's undisputed that neither Mumford nor any of the counterclaim defendants accepted those proposals, so they aren't enforceable.

As for the promise to "complet[e] . . . all Stoneridge ordered and paid-for tooling, fixtures and parts," Stoneridge's counterclaim isn't based on a failure to complete orders but rather to provide "timely provide quality parts." Stoneridge doesn't allege that Stroh failed to complete any orders.

Stoneridge's only argument on the scope of the July 20 email is that there is "a dispute of material fact as to what entities the guaranty extends to" because the email says that it

applies to Mumford "[j]ointly with our other 4 aluminum die casting companies." Dkt. 33, at 17. But that language applies only to the promise of making "reasonable effort to provide continuity in manufacturing." In any event, Stoneridge doesn't respond to any of counterclaim defendants' arguments about why the language of the July 20 email doesn't include promises to provide "timely provide quality parts" or "ensure that Stoneridge is paid the outstanding amounts owed to Stroh." Counterclaim defendants are entitled to summary judgment on Stoneridge's contract and warranty counterclaims against them.

### C. Promissory estoppel

Stoneridge's counterclaim for promissory estoppel doesn't require extended discussion. That counterclaim is pleaded in the alternative to the contract claim, and it's also based on the July 20 email. A party may bring a claim for promissory estoppel if it relies on an unfulfilled promise to that party's detriment. *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 697–98, 133 N.W.2d 267, 275 (1965). This counterclaim fails for a similar reason to the contract counterclaim: even assuming that the July 20 email includes promises, Stoneridge hasn't identified a promise in the email that counterclaim defendants breached.

### D. Intentional misrepresentation

Stoneridge's misrepresentation counterclaim is against Mumford only, but it is also based on the July 20 email. In its amended counterclaim, Stoneridge alleges that counterclaim defendants "made material representations that they would personally guarantee the payment and completion of all Stoneridge orders and return of paid-for tooling, fixtures and parts." Dkt. 13, ¶ 63. But even if that portion of the email could be construed as a representation, Stoneridge hasn't adduced any evidence that the representation was false, which is the first

element of a misrepresentation claim. *See Malzewski v. Rapkin*, 2006 WI App 183, ¶ 20, 296 Wis. 2d 98, 113, 723 N.W.2d 156, 163.

In its summary judgment opposition brief, Stoneridge relies on a different portion of the July 20 email, alleging that Mumford misrepresented that "[t]he financial viability of Stroh as an independent entity, or lack therefore, will not impact Mumford's ability and commitment to supply Stoneridge." Stoneridge says that the representation was false because Mumford was "acutely aware of Stroh's financial insolvency." Dkt, 33, at 21. But it's well established that "a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) (internal quotation marks omitted). So the court can't consider Stoneridge's new counterclaim.

In any event, the alleged representation was part of a proposed agreement, and, as already discussed, Stoneridge hasn't adduced admissible evidence that it ever accepted Mumford's offer. Justifiable reliance is an element of any misrepresentation claim, *Hennig v. Ahearn*, 230 Wis. 2d 149, 173, 601 N.W.2d 14, 25 (Ct. App. 1999), but Stoneridge cites no authority for the view that a party may reasonably rely on a statement in a proposed agreement that never took effect. If an offer isn't accepted, the only reasonable inference is that neither party is bound by any promises or representations in the document.

## CONCLUSION

Stoneridge's counterclaims against counterclaim defendants fail because Stoneridge hasn't adduced evidence that they made an enforceable promise or that counterclaim defendants breached any promises. Stoneridge has also failed to support its misrepresentation

claim. Counterclaim defendants are entitled to summary judgment on all of Stoneridge's counterclaims.

ORDER

IT IS ORDERED that the first motion for summary judgment filed by counterclaim defendants Advance Die Cast, Michigan Die Casting, Great Lakes Die Cast, Mumford Metal Casting Chicago, and Phil Mumford, Jr., Dkt. 27, is GRANTED and those parties are DISMISSED from the case. Counterclaim defendants' second motion for summary judgment, Dkt. 46, is DENIED as moot.

Entered January 20, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge